UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA MARIE JACKSON,

                          Plaintiff,          **11-CV-6470T**

              v.                              **DECISION and ORDER**

MICHAEL ASTRUE,
Commissioner of Social Security,

                          Defendant.
_____

## INTRODUCTION

Plaintiff Tina Marie Jackson ("Plaintiff"), brings this action
pursuant to Title II of the Social Security Act ("the Act"),
seeking review of the final decision of the Commissioner of Social
Security ("Commissioner"), denying her application for Disability
Insurance Benefits ("DIB").  Specifically, Plaintiff alleges that
the decision of the Administrative Law Judge ("ALJ"), denying
Plaintiff's application for benefits, did not give proper weight to
Plaintiff's treating physician's opinions as to her disability.
Plaintiff also argues that the ALJ failed to properly evaluate her
credibility, and that the ALJ erred by relying upon the medical-
vocational guidelines in determining that Plaintiff can perform
alternative work.

The Commissioner moves for judgment on the pleadings pursuant
to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)"), on the grounds that the
decision of the ALJ was supported by substantial evidence in the
record and that Plaintiff was not disabled during the relevant

period under review.  Plaintiff opposes the Commissioner's motion, and cross-moves for reversal of the ALJ's decision on the grounds alleged above.  For the reasons set forth herein, the Court finds that the Commissioner's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record.  Therefore, the Commissioner's motion for judgment on the pleadings is denied. The case is reversed and remanded to the Commissioner for calculation and payment of benefits.

<u>**BACKGROUND**</u>

The Plaintiff filed an application for DIB under Title II of the Social Security Act on July 7, 2008, claiming a disability since August 1, 2007.[1]  The application was initially denied on October 23, 2008.  (Transcript of Administrative Proceedings ("Tr.") at 52-59).  Plaintiff filed a timely request for a hearing on December 15, 2008.  (Tr. at 21).

Plaintiff appeared with counsel and testified at the hearing on March 9, 2010 before ALJ Mark Hecht, who presided via video teleconference. (Tr. at 32-48).  In a decision dated March 16, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. at 18-28).  The Appeals Council denied further review, and the ALJ's decision became the

---

[1]Plaintiff's application for benefits is not included in the administrative record.

final decision of the Commissioner on July 22, 2011.  (Tr. at 1-5).
Plaintiff then filed this action.

**DISCUSSION**

**I.    Jurisdiction and Scope of Review**

Title 42 U.S.C.. § 405 (g) grants jurisdiction to district
courts to hear claims based on the denial of Social Security
benefits.  When considering such claims, this section directs the
Court to accept the findings of fact made by the Commissioner,
provided that these findings are supported by substantial evidence
in the record.  Substantial evidence is "such relevant evidence as
a reasonable mind might accept as adequate to support a
conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217
(1938).  Section 405(g) limits the Court's scope of review to
determining whether the Commissioner's findings are supported by
substantial evidence and whether the Commissioner employed the
proper legal standards. See Monger v. Heckler, 722 F.2d 1033, 1038
(2d Cir. 1982) (finding that a reviewing court does not try a
benefits case de novo).  The Court must "scrutinize the record in
its entirety to determine the reasonableness of the decision
reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983)
(citing Simmons v. Harris, 602 F.2d 1233, 1236 (5th Cir. 1979)).

The Commissioner moves for judgment on the pleadings pursuant
to Rule 12(c) of the Federal Rules of Civil Procedure, asserting
that his decision was reasonable and was supported by substantial

evidence in the record. Rule 12(c) permits judgment on the pleadings where the material facts are undisputed and where judgement on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). In this case, this Court finds that there is sufficient evidence in the record for the Commissioner to find that Plaintiff is disabled within the meaning of the Social Security Act. Therefore, Plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.

II. **The Commissioner's decision to deny the Plaintiff benefits is not supported by substantial evidence in the record.**

In his decision denying Plaintiff's application for benefits, the ALJ adhered to the five step sequential analysis for evaluating Social Security Disability benefits claims, which requires the ALJ to consider the following criteria:

(1) whether the claimant is engaged in any substantial gainful work activity;

(2) if not, whether the claimant has a severe impairment that significantly limits her ability to work;

(3) whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4.

See 20 C.F.R. §§ 404.1520 (a)(i)-(iv) and 416.920(a)(4)(i)-(iv). If so, claimant is considered disabled. See id. If not, the ALJ determines whether the impairment prevents the claimant from

performing past relevant work; if the claimant has the residual functional capacity ("RFC") to do her past work, she is not disabled. See id. Even if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational limitations, she is not disabled. See 20 C.F.R. §§ 404.1520 (a)(i)-(iv) and 416.920(a)(4)(i)-(iv).

In this case, the ALJ found that (1) Plaintiff did not engage in substantial activity during the period from her alleged onset date of August 1, 2007 through her date last insured[2] of March 31, 2009;[3] (2) Plaintiff had a severe combination of impairments: cyclic vomiting syndrome, hypertension, neck impairment, and degenerative disc disease of the lumbar spine; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had no past relevant

---

[2]To qualify for disability insurance benefits, one must be both disabled and insured for disability. 42 U.S.C. § 423(a)(1)(A) and (E); 20 C.F.R. § 404.101, 404.120, and 404.315(a). The date that a person last met these requirements is commonly referred to as "the date last insured."

[3]Because the ALJ's decision was based on the period from Plaintiff's alleged onset date of August 1, 2007, through her date last insured of March 31, 2009, this Court's discussion of Plaintiff's disability status is limited to this time period. As such, the Court will omit repeated reference to "the date last insured" and proceed with the discussion as it relates to that time.

work; and (5) Plaintiff had the RFC to perform the full range of work as defined in 20 C.F.R. §404.1567(b).  (Tr. at 21-28).

The ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, a significant number of jobs existed in the national economy that Plaintiff could have performed.  (Tr. at 27).  This Court finds that the ALJ's decision is not supported by substantial evidence in the record, and that there is substantial evidence in the record to find that Plaintiff was disabled within the meaning of the Act through her date last insured.

### A.   **The ALJ did not afford proper weight to the opinion of Plaintiff's treating physician.**

The ALJ found that the opinions of Plaintiff's treating physician, Dr. John Robb, were not entitled to controlling weight, and gave Dr. Robb's opinions "little weight."  (Tr. at 26). Dr. Robb completed a Gastrointestinal Disorders Impairment Questionnaire ("GDIQ") dated June 12, 2009 (Tr. at 742-47), in which he diagnosed cyclic vomiting syndrome with clinical findings including chronic diarrhea, loss of appetite, blood in stool, dumping syndrome, abdominal pain and cramps, malaise, fatigue, nausea, pain, and vomiting. (Tr. at 743). Dr. Robb cited to evaluations by gastroenterologist Dr. Asad Ullah as diagnostic evidence supporting his findings. (Id.) Dr. Robb determined that Plaintiff's pain, fatigue, and other symptoms "constantly" interfered with her attention and concentration, and that she was

incapable of handling even low stress work, which might precipitate her abdominal symptoms. (Tr. at 745). In a letter dated January 12, 2010, Dr. Robb opined that Plaintiff was unable to work as the result of recurrent acute abdominal pain requiring frequent emergency room visits, hospital admissions, and treatment (Tr. at 759). Dr. Robb completed a narrative report regarding Plaintiff on June 1, 2010, which was submitted to the Appeals Council (Tr. at 786). Dr. Robb reiterated his findings detailed in the GDIQ and January 2010 letter, and stated that as a result of her symptoms and limitations, Plaintiff remained disabled and unable to work in a full-time capacity. (Id.).

However, the ALJ concluded that the underlying evidence was insufficient to support Dr. Robb's opinions because, according to the ALJ's view, it only showed that Plaintiff had abdominal tenderness, dry heaves, and mild gastritis. (Tr. at 26). The ALJ also found that Dr. Robb's opinions were contradicted by findings from her gastroenterologist, Dr. Ullah. (Tr. at 26). The ALJ characterized Dr. Ullah's opinion as "not[ing] that the claimant's condition is clinically stable and is well controlled with a proper diet and medication." (Tr. at 26). Thus, the ALJ decided to give Dr. Robb's reports "little weight" and gave the reports of Dr. Ullah "some weight" to the extent they supported the ALJ's RFC determination. (Tr. at 26). The ALJ also gave "little weight" to the opinions of the Commissioners's examining physician, Dr. Karl

Eurenius, finding these opinions inconsistent with examinations conducted after his September 25, 2008 evaluation. (Tr. at 26). However, the relative weight assigned to the medical opinions was based upon the ALJ's misunderstanding of cyclic vomiting syndrome and his mischaracterization of Dr. Ullah's clinical findings.

Generally, a treating physician's opinion is given controlling weight when it is well-supported by medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 416.927(d)(2), §416.1527(d)(2). The following factors must be considered when determining the weight given to a physician's medical opinion: (1) the existence of a treatment relationship; (2) the length and frequency of the treatment relationship; (3) whether the treating physician's opinion is supported by clinical and laboratory findings; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist; and (6) other factors that support or contradict the medical opinion of the treating physician. See 20 C.F.R. §§ 416.927 (d)(3)-(6), 416.1527(d)(3)-(6).

Based on the factors set forth above, the record reveals that Dr. Robb's opinions should have been given controlling weight. As the record shows, prior to her alleged disability onset date, Plaintiff began receiving treatment with a gastroenterologist, Dr. Prasad Penmetsa, in 2005. (Tr. at 151). Plaintiff was treated

throughout 2005 and 2006 for complaints of abdominal pain, nausea, vomiting, and diarrhea. (Tr. at 145, 148, 151). On May 16, 2006, Dr. Penmetsa reported that a colonoscopy showed mild sigmoid diverticulosis. (Tr. at 145). In a report dated May 9, 2007, Dr. Penmetsa noted that Plaintiff was treated again at Park Ridge Hospital for nausea, vomiting, abdominal pain, and diarrhea. (Tr. at 142). The doctor diagnosed gastritis and possible irritable bowel syndrome. (Tr. at 142). Plaintiff continued to experience abdominal pain, nausea, vomiting and diarrhea through 2006 and 2007. (Tr. at 142-50, 183-90).

On August 24, 2007, after her alleged onset date, Plaintiff was admitted to the hospital due to worsening abdominal pain with nausea. (Tr. at 175). An examination revealed mild tenderness throughout the abdomen, and Plaintiff was diagnosed with chronic abdominal pain of unknown etiology. (Tr. at 175). Plaintiff was treated as an inpatient through August 25, 2007, and prescribed Percocet. (Tr. 175-76).

On September 9, 2007, Plaintiff returned to the emergency room with complaints of abdominal pain associated with loss of appetite and vomiting. (Tr. at 331). Plaintiff was prescribed Zofran and Lortab. (Tr. at 333). On September 29, 2007, Plaintiff again returned to the emergency room with abdominal pain, nausea, and vomiting. (Tr. at 347). She was diagnosed with chronic abdominal pain, nausea, and vomiting. (Tr. at 349). X-rays of the upper GI

and small bowel dated November 2, 2007, showed large duodenal sweep diverticulum. (Tr. at 197).

During a follow-up visit on November 12, 1997, Plaintiff complained of continued abdominal pain that was worse at night and variable stools from loose to hard. (Tr. at 196). An examination revealed mild tenderness of the abdomen, and Dr. Penmetsa diagnosed likely irritable bowel syndrome and prescribed Bentyl. (Tr. at 196). On December 11, 2007, Plaintiff was admitted to the hospital for nausea and vomiting with an inability to tolerate anything by mouth and associated abdominal pain. (Tr. at 386). A CT scan of her pelvis revealed left colon diverticulosis with slight wall thickening in the sigmoid segment. (Tr. at 391). Plaintiff was treated as an inpatient for four days, and discharged on December 15, 2007. (Tr. at 385).

Less than two weeks later, on December 28, 2007, Plaintiff returned to the emergency room for recurrent abdominal pain, nausea, and vomiting. Plaintiff's assessment noted yellow emesis and continued complaints of nausea. (Tr. at 436, 437). Plaintiff was treated with IV fluids and discharged the same day. (Tr. at 437). Plaintiff was seen for similar symptoms of nausea, vomiting, and severe abdominal pain on January 22, 2008; January 29, 2008; January 31, 2008; and February 4, 2008. (Tr. at 438, 442, 449, 460-64).

On February 5, 2008, Plaintiff was again admitted to the hospital and treated as an impatient through February 14, 2008 for her abdominal pain, nausea, and vomiting. (Tr. at 465, 471). An esophagogastroduodenoscopy ("EGD") was performed on February 6, 2008, and revealed mild gastritis. (Tr. at 469). On March 19, 2008, Plaintiff returned to the emergency room due to abdominal pain. (Tr. at 547-55). On April 5, 2008, Plaintiff again went to the emergency room with recurrent abdominal pain. (Tr. at 676). She was observed to be in moderate distress, and was treated and discharged the same day. (Tr. at 677, 679).

On May 5, 2008, Plaintiff was seen by Dr. Penmetsa and reported continued episodes of nausea and abdominal pain, as well as four to five bowel movements a day. (Tr. at 192). Dr. Penmetsa concluded that a further work-up was necessary to determine the cause of Plaintiff's continued pain and associated GI symptoms. (Tr. at 192). On October 13, 2008, Plaintiff was seen in the emergency room and again treated for abdominal pain and nausea. (Tr. at 602-08). Plaintiff received treatment for recurrent abdominal pain, nausea, and vomiting on December 22, 2008 (Tr. at 609-14); May 21, 2009 (Tr. at 615-20); and June 1, 2009 (Tr. at 621-26).

On February 4, 2008, Plaintiff visited Dr. Robb's office for a follow-up for her chronic abdominal pain. His examination revealed diffuse abdominal tenderness, and he diagnosed recurrent

abdominal pain and prescribed Duragesic patches.  (Tr. at 208-09).

On June 23, 2008, Plaintiff saw Dr. Robb in follow-up regarding her

abdominal discomfort for which Dr. Robb prescribed Percocet.  (Tr.

at 208).   On August 6, 2008, Plaintiff saw Dr. Robb and reported

suffering from decreased appetite, malaise, weight loss, nausea,

vomiting, diarrhea, and abdominal pain. An examination revealed

abdominal tenderness. Dr. Robb diagnosed abdominal pain, persistent

vomiting, and irritable colon.  (Tr. at 204-06).

On November 24, 2008, Plaintiff saw Dr. Ullah, a

gastroenterologist, for her recurrent episodes of nausea, vomiting,

and abdominal pain which began in 2005 and resulted in over thirty-

five emergency room visits and multiple hospitalizations.

Plaintiff reported extensive work-up for her systems with no

specific cause found.  (Tr. at 754).   Dr. Ullah believed that

Plaintiff's symptoms could be due to either cyclic vomiting

syndrome or gastroparesis, and recommended blood testing and a

gastric emptying test.  (Tr. at 756).   A gastric emptying study

performed on January 6, 2009 revealed borderline prolonged gastric

emptying.  (Tr. at 757).

On January 12, 2009, Plaintiff was seen for follow-up with Dr.

Ullah, and she reported unchanged symptoms. Plaintiff reported an

episode in December 2008, wherein she vomited for twenty hours

straight.  Plaintiff also complained of diarrhea with eight to ten

bowel movements per day.  (Tr. at 752).   Dr. Ullah diagnosed

possible cyclic vomiting syndrome.  (Tr. at 752).   On August 13,

2009, Plaintiff reported approximately ten episodes of emesis per week and four episodes of severe abdominal pain lasting twenty-four to forty-eight hours since the previous visit. Plaintiff also reported three to four bowel movements a day that alternated from hard to watery. (Tr. at 749). Dr. Ullah diagnosed cyclic vomiting syndrome.[4] (Tr. at 750). Dr. Ullah also increased Plaintiff's Nexium and continued her Reglan and antiemetic medication, as well as her belladonna, Amitriptyline, and over-the-counter stool softeners. (Tr. at 750).

As noted above, Dr. Robb completed a GIDQ dated June 12, 2009.[5] (Tr. at 742-47). Dr. Robb noted that he began treating Plaintiff in August 2007, and documented frequency of treatment as

_____

[4]"Cyclic vomiting syndrome ("CVS") is characterized by episodes or cycles of severe nausea and vomiting that last for hours, or even days, and that alternate with intervals with no symptoms. . . . CVS occurs in all age groups. . . . Episodes can be so severe that a person has to stay in bed for days, unable to go to school or work. Because other more common diseases and disorders also cause cycles of vomiting, many people with CVS are initially misdiagnosed until other disorders can be ruled out. . . . CVS is hard to diagnose because no tests—such as a blood test or x ray—can establish a diagnosis of CVS. A doctor must look at symptoms and medical history to rule out other common diseases or disorders that can cause nausea and vomiting. *Making a diagnosis takes time because the doctor also needs to identify a pattern or cycle to the vomiting.*" Cyclic Vomiting Syndrome, National Digestive Disease Information Clearing House, U.S. DEPT. OF HEALTH AND HUMAN SERVS. (October 30, 2012, 10:55 AM) www.digestive.niddk.nih.gov/ ddiseases/pubs/cvs/. (emphasis added).

[5]Dr. Robb completed this questionnaire subsequent to Plaintiff's date last insured (March 31, 2009). However, since the ALJ relied on this questionnaire in rejecting Dr. Robb's opinion (Tr. at 26), the Court will consider it accordingly.

every one to ??? months, with Plaintiff's most recent exam taking
place on June 10, 2009.  (Tr. at 742).  Dr. Robb diagnosed cyclic
vomiting syndrome.  (Tr. at 742).  Clinical findings included
chronic diarrhea, loss of appetite, blood in stool, dumping
syndrome, abdominal pain and cramps, malaise, fatigue, nausea,
pain, and vomiting.  (Tr. at 743).  Dr. Robb cited Dr. Ullah's
evaluations as diagnostic evidence to support his findings.  (Tr.
at 743).  Dr. Robb rated Plaintiff's pain as severe, "10+" on a
10-point scale.  (Tr. at 745).  Dr. Robb noted that Plaintiff's
impairments lasted or could be expected to last at least twelve
months.  (Tr. at 745).  Dr. Robb opined that Plaintiff's pain,
fatigue, or other symptoms "constantly" interfered with her
attention and concentration, and found that Plaintiff was incapable
of handling even low stress work, which might precipitate her
abdominal symptoms.  (Tr. at 745).

Dr. Robb opined that Plaintiff was able to sit for one to two
hours total and stand/walk for one to two hours total in an
eight-hour workday.  (Tr. at 745).  Plaintiff experienced good days
and bad days.  (Tr. at 746).  Dr. Robb estimated that Plaintiff
would be absent from work, on average, more than three times a
month.  (Tr. at 746).  Plaintiff required ready access to a
restroom with a need for unscheduled bathroom breaks lasting up to
thirty minutes.  (Tr. at 746-47).  Dr. Robb reported that the

symptoms and limitations detailed in the questionnaire were present since August 2005.  (Tr. at 747).

In a letter[6] dated January 12, 2010, Dr. Robb opined that Ms. Jackson was unable to work as a result of recurrent acute abdominal pain requiring frequent emergency room visits, hospital admissions, and treatment.  (Tr. at 759).  Plaintiff had symptoms of pain and nausea without provocation and at unpredictable times which required bed rest and adjustment of diet, as well as hospital treatment when she did not respond to other, more conservative treatment modalities.  (Tr. at 759).  Dr. Robb also noted that Plaintiff's medications may cause drowsiness and decreased concentration that would interfere with work activities.  (Tr. at 759).

Dr. Robb completed a narrative report concerning Plaintiff dated June 1, 2010, in which he reiterated his findings detailed in the GDIQ and the January 2010 letter.  Dr. Robb opined that as a result of these persistent symptoms and limitations, Plaintiff remained disabled and unable to work in a full-time capacity.  (Tr. at 786).

Comparing Dr. Robb's opinions with those offered by, e.g., Dr. Ullah, it is apparent that Dr. Robb's opinions were based on

_____

[6]As with Dr. Robb's questionnaire, Dr. Robb's letter is dated after Plaintiff's date last insured.  However, since the ALJ considered the letter in rejecting Dr. Robb's opinions (Tr. at 26), the Court will consider it accordingly.

medically acceptable findings and should have been afforded controlling weight, as Dr. Robb also fulfilled the other relevant criteria under 20 C.F.R. §§ 416.927(d)(2), 416.1527 (d)(2). As the record shows, Dr. Robb treated Plaintiff for a period of several years; he supported his opinions with detailed findings that were consistent with the findings of other gastroenterologists; and he is a board-certified specialist in gastroenterology. Dr. Robb based his opinions on evidence that Plaintiff suffers from chronic diarrhea, loss of appetite, blood in her stool, dumping syndrome, abdominal pain and cramps, malaise, fatigue, nausea, pain, and vomiting, as well as testing performed by Dr. Ullah to rule out other medical conditions. (Tr. at 743).

The Commissioner argues that Dr. Robb failed to identify any diagnostic or clinical evidence to support his assessment. (Def. Mem. at 23). In support of this argument, the Commissioner states that Dr. Robb relied on Plaintiff's "symptoms" of chronic diarrhea, vomiting, loss of appetite, malaise, and fatigue, and that these symptoms are merely descriptions of an impairment, and not sufficient evidence to support Dr. Robb's assessment. (Def. Mem. at 23). Again, this reveals a misunderstanding of cyclic vomiting syndrome. As noted above, cyclic vomiting syndrome is difficult to diagnose through testing, and a doctor must instead look at a patient's symptoms and medical history to rule out other common diseases or disorders that can cause nausea and vomiting, before

reaching a diagnosis. Physicians may rely on a patient's subjective statements when the patient suffers from a condition that cannot be diagnosed through testing. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (finding that "[a] patient's report of complaints, or history, is an essential diagnostic tool") (citing Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997)) (internal citations omitted). Thus, Dr. Robb's use of Plaintiff's symptoms as a diagnostic tool was permissible–particularly since these symptoms existed over a significant period of time.

Dr. Robb's opinions also were uncontradicted by other substantial evidence in the record. The ALJ concluded that the medical findings were insufficient to establish the severity of Plaintiff's cyclic vomiting syndrome, as documented by Dr. Robb. Again however, there are no simple tests for diagnosing cyclic vomiting syndrome; rather, the condition is only diagnosed by symptoms, history, and ruling out other conditions through testing, as was done here. Additionally, contrary to what the ALJ claimed (Tr. at 26), Dr. Ullah did not find that Plaintiff's symptoms were "well controlled with proper diet and medication." Rather, Dr. Ullah noted that Plaintiff's condition had been "controlled somewhat, but not completely with [medications]." (Tr. at 762). Dr. Ullah also noted that Plaintiff "continues to struggle despite the medical regimen." (Tr. at 762). Further, even with optimal

treatment, Plaintiff had continued episodes of nausea and vomiting ten to fifteen times per month.   (Tr. at 761). The Court finds noteworthy the observations made by Dr. Eurenius, consultative medical examiner for the Commissioner, during his evaluation of Plaintiff on September 25, 2008. That day, Dr. Eurenius stated that "it [was] of interest that approximately ten minutes after the abdominal examination, she had one of those spells [of extreme gastric distress] and had to go to the bathroom for explosive diarrhea." (Tr. 259).   Thus, the ALJ erroneously mischaracterized the Dr. Ullah's findings. See Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010)("Because the ALJ's adverse credibility finding, which was crucial to his rejection of Genier's claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider 'all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and cannot stand.").

Additionally, Dr. Ullah never gave an opinion on Plaintiff's capacity to function in a work environment, which did not permit the ALJ to draw a negative inference from the fact that Dr. Ullah did not provide an opinion on Plaintiff's disability.  See Rosa v. Callahan, 168 F.3d 72, 81 (2d Cir. 1999)(finding that "the ALJ mistakenly permitted the Commissioner to satisfy its burden of proof without requiring affirmative evidence demonstrating [the claimant's] residual functional capacity to meet the demands of sedentary work" and noting that its precedent refusing "to uphold

an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings")(citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983); other citation omitted)).

Finally, the only opinion in the record consistent with the ALJ's finding that Plaintiff had the ability to perform light work was from a "disability analyst" who has no medical training. (Tr. at 26). Such non-medical sources are not acceptable opinions under the Act's regulations. See 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources"); see also Campbell v. Astrue, 713 F.Supp.2d 129, 139 (N.D.N.Y. 2010) (finding that the opinion of a disability analyst who had no medical training is not entitled to weight as a medical opinion pursuant to 20 C.F.R. § 404.1527(a)(2); citation omitted); Hopper v. Comm'r of Soc. Sec., No. 7:06-CV-0038 (LEK/DRH), at *10 (N.D.N.Y. Mr. 17, 2008) (agreeing that "a disability analyst is not considered to be an acceptable medical source under the Regulations") (citing 20 C.F.R. § 404.1513(a); footnote omitted).

Accordingly, this Court finds that the ALJ did not afford proper weight to the opinion of Plaintiff's treating physician, Dr. Robb, which should have been afforded controlling weight.

**B.** **The ALJ improperly concluded that the Plaintiff's subjective complaints were not entirely credible.**

The ALJ found that while the Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 25). This Court finds that the ALJ improperly evaluated Plaintiff's testimony.

Plaintiff testified that she began having abdominal pain in August 2005. (Tr. at 39). Plaintiff said her medications helped relieve vomiting at times, but stated that she continued to experience nausea, and that her medications made her tired and were "extremely draining." (Tr. at 41-42, 45). Plaintiff testified that she had no warning of when she would experience an acute onset of symptoms, stating "I have no idea when it's going to happen. It just happens." (Tr. at 41). Plaintiff reported that she continued to have vomiting episodes three to five days per week even when taking her medication. (Tr. at 42). Plaintiff also stated that she experienced more severe attacks every twenty-one to twenty-eight days with vomiting episodes that last all day long. (Tr. at 42). Plaintiff also reported that her activities were significantly limited by fatigue. (Tr. at 45).

Plaintiff described an average day as waking up and getting her daughter off to school, then taking her medications and waiting

to see how she responds. (Tr. at 43). Plaintiff stated that she typically experienced a resurgence of symptoms within an hour or two of waking, but sometimes not until later in the day. (Tr. at 43). Plaintiff reported difficulty sleeping, averaging two to four hours of broken sleep per night. (Tr. at 47). Plaintiff described difficulty performing household chores, and said that smells from the grocery store and washing dishes nauseated her. (Tr. at 43, 45-46). Plaintiff testified that her husband did most of the cooking and all of the shopping. (Tr. at 43).

The ALJ rejected Plaintiff's testimony, finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 25). The ALJ also found insufficient clinical and diagnostic evidence of Plaintiff's impairments, and further found that Plaintiff's condition improved and stabilized with treatment, as evidenced by a good appetite, no weight loss, responsiveness to medication, and less frequent emergency room treatment. The ALJ also noted that Plaintiff could prepare simple meals, fold laundry, drive, and care for her personal needs. (Tr. at 25).

However, the ALJ's conclusion is belied by the substantial evidence in the record which supports Plaintiff's testimony. It was improper for the ALJ to reject Plaintiff's testimony because it was

inconsistent with his own RFC.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (holding that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . . While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him") (citing McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)) (internal citations omitted); see also Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000) (holding "neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion")(internal citations omitted).

As discussed in detail above, the Plaintiff consistently reported disabling symptoms of abdominal pain, nausea, vomiting, and diarrhea to her doctors. Plaintiff reported that she experienced these symptoms with a frequency she described as disabling. As noted above, the ALJ inappropriately required greater clinical and diagnostic findings not relevant to Plaintiff's medical condition and mischaracterized the record by finding her symptoms were "controlled."

Additionally, the fact that Plaintiff can prepare simple meals, fold laundry, drive, and care for her personal needs does not mean she can work full-time on a sustained basis.  A claimant

who engages in activities of daily living, especially when those activities are not engaged in "for sustained periods comparable to those required to hold a sedentary job," may still be found to be disabled.  See Kaplan v. Barnhart, No. 01-CV-8438 (SJ), 2004 WL 528440, at *3, 2004 U.S. Dist. LEXIS 13025, at *9 (E.D.N.Y Feb. 24, 2004) (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)).

The ALJ's findings were not supported by the medical evidence and did not warrant an adverse credibility determination. Plaintiff provided ample testimony of her symptoms, physical limitations, limited daily activities, and lack of significant improvement (Tr. at 41-47) that was entirely consistent with the record.  As such, this Court finds that the ALJ improperly evaluated Plaintiff's credibility in a manner which was not supported by the record.

**C.** **The ALJ erred by relying upon the Medical-Vocational Guideline Rules.**

In cases where there are a combination of significant exertional and non-exertional limitations,[7] the Commissioner cannot rely upon the Medical-Vocational Guideline Rules ("the Grids") to meet his burden of showing there is work in the economy that

---

[7]Exertional impairments are those that affect only the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)," whereas non-exertional impairments are those affecting a claimant's ability to meet job demands unrelated to strength demands.  20 C.F.R.  §§ 416.969a(a)(b) and (c).

Plaintiff can perform. In such cases, "full consideration must be given to all the relevant facts" when the case cannot be wholly determined under the Rules because the claimant does not fit a particular exertional category. 20 C.F.R. Subpart P, Appendix II, Rule 200.00(e). Indeed, "[e]xposure to particular work stresses may not be medically sustainable for some persons with certain [non-exertional impairments], as would be the case with some persons who have . . . certain cardiovascular or gastrointestinal disorders." S.S.R. 83-14, 1983 WL 31254, at *2 (S.S.A. 1983); see also 20 C.F.R. § 416.969a(c).

When a claimant's non-exertional limitations significantly diminish her ability to perform the full range of work at a particular level, "the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can perform." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); see also Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986) (finding that when "a claimant's non-exertional impairments 'significantly limit the range of work permitted by [her] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's non-exertional impairments, and holding that "where the claimant's work capacity is significantly diminished beyond that caused by [her] exertional impairment[,] the

application of the grids is inappropriate")(internal citations omitted).

Based upon his assessment that Plaintiff had the RFC to perform "light work", the ALJ utilized Medical-Vocational Guidelines Rule 202.17 to conclude that Plaintiff could perform work in the national economy and therefore was not disabled. (Tr. at 26-7). However, Plaintiff's impairments are almost exclusively non-exertional in nature. While the ALJ found that Plaintiff had a combination of severe impairments (cyclic vomiting syndrome, hypertension, neck impairment, and degenerative disc disease of the lumbar spine), there is no question that Plaintiff's disability stems primarily from her cyclic vomiting syndrome with recurrent vomiting, nausea, abdominal pain, and fatigue, which are unrelated to any physical activities. (Tr. at 104-11, 115-25, 126-32). Indeed, the ALJ specifically acknowledged Plaintiff's reliance on her cyclic vomiting syndrome in his determination. (Tr. at 24-25). This syndrome, along with its attendant symptoms, are non-exertional in nature. Therefore, use of the Grids was not permitted. See Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996) (finding that the ALJ was not permitted to rely exclusively on the Grids after conceding that the claimant suffered from severe non-exertional impairments) (citation omitted). As the record shows, no vocational expert testimony was given at the hearinig. The ALJ was required to call a vocational expert to meet the Commissioner's

burden of proof at step five of the analysis, and his failure to do so constituted reversible error. See Burgos v. Barnhart, 01 Civ. 10032, 2003 U.S. Dist. LEXIS 14407, 2003 WL 21983808, at *19 (S.D.N.Y. Aug. 20, 2003) (remanding the case to the Commissioner for several reasons including the need "to introduce the testimony of a vocational expert or receive other evidence, apart from the Medical-Vocational Guidelines, regarding the existence of jobs in the national economy for a person with Plaintiff's non-exertional impairments"), report and recommendation adopted in unreported opinion (S.D.N.Y. Oct. 14, 2003).

As such, this Court finds that the ALJ improperly relied upon the Medical-Vocational Guidelines in finding that Plaintiff could perform alternative work. In light of Plaintiff's significant non-exertional limitations, the ALJ was obligated to call a vocational expert to testify but failed to do so. This error requires, at a minimum, remand to the Commissioner for further administrative proceedings. However, as discussed above in this Decision and Order, the record compelling supports a finding that Plaintiff is disabled. Therefore, remand for additional proceedings before the ALJ is unnecessary.

## CONCLUSION

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of record, a judgment affirming, modifying or reversing the decision of the

[Commissioner], with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Here, the Court finds that the record conclusively shows that Plaintiff is disabled within the meaning of the Act. Therefore, a reversal and remand for calculation of benefits is appropriate. See Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983)(reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was not supported by substantial evidence in the record. Accordingly, Plaintiff's motion for judgment on the pleadings is granted. The Commissioner's motion is denied.  The case is remanded to the Commissioner for calculation and payment of benefits.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:      November 6, 2012
            Rochester, New York